UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

August 23, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Michelle W. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
      Civil No. 23-2898-CDA

Dear Counsel:

On October 25, 2023, Plaintiff Michelle W. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 9) and the parties' briefs (ECFs 12, 15, and 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on January 13, 2021, alleging a disability onset of January 1, 2016. Tr. 165-70. Plaintiff's claims were denied initially and on reconsideration. Tr. 99-107. On March 23, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 43-71. Following the hearing, on April 26, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 17-42. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.  THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on October 25, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since January 13, 2021, the application date[.]" Tr. 22. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "right leg Achilles tendinitis, status-post left Achilles tendon repair, morbid obesity, bipolar disorder with psychotic features, battered woman syndrome, adjustment disorder with depressed mood, post-traumatic stress [PTSD] disorder, and opiate use disorder (*in remission*)[.]" Tr. 22 (alterations in original). The ALJ also determined that Plaintiff suffered from the non-severe impairments of hypertension. Tr. 23. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 23. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except the claimant can lift up to 20 pounds occasionally and 10 pounds frequently; she can stand or walk for six hours out of an 8-hour workday, and she can sit for six hours in an 8-hour workday. She can perform work that is limited to simple, routine, and repetitive tasks in an environment where she is not expected to perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. She can perform work where there are few, if any, workplace changes. She can perform work that involves only occasional interaction with the general public, co-workers, and supervisors.

Tr. 28. The ALJ determined that Plaintiff was unable to perform past relevant work as a Certified Nursing Assistant (DOT[3] #355.674-014) but could perform other jobs that existed in significant numbers in the national economy. Tr. 35-36. Therefore, the ALJ concluded that Plaintiff was not

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

disabled. Tr. 37.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff's sole contention is that the ALJ improperly reached the RFC by misapplying the legal standards set forth in 20 C.F.R. § 404.1545(b)-(c), leaving their decision unsupported by substantial evidence. ECF 12, at 7. Plaintiff avers that the "ALJ materially erred by failing to provide any narrative explanation as to why [they] included" the particular limitation of "an environment where [Plaintiff] is not expected to perform work requiring a specific production rate, such as assembly line work or work that requires hour quotas[.]" ECF 12, at 9. Defendant counters that the ALJ properly accounted for Plaintiff's moderate limitation in concentration, persistence, or maintaining pace ("CPP") when assessing the RFC. ECF 15, at 5.

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilit[y] to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

Specific to a limitation in the functional area of CPP, an ALJ must expressly account for such limitation, or explain why no such limitation exists, in the function-by-function analysis. *Mascio*, 780 F.3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638 (citation omitted) (joining the Third, Seventh, Eighth, and Eleventh Circuits in holding "that an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work");

*Shinaberry*, 952 F.3d at 121-22. However, as *Mascio* explained, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (quoting *Mascio*, 780 F.3d at 638). Additionally, when a medical opinion provides "detailed findings" regarding a claimant's "sustained concentration and persistence limitations," an ALJ may account for those limitations by assigning persuasive weight to the opinion and incorporating the opined limitations into the RFC. *See Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017).

Here, the ALJ determined that Plaintiff had a moderate CPP limitation. Tr. 26. The ALJ then limited Plaintiff, based on "the evidence as a whole" and her symptoms from her severe impairments, to "simple, routine, and repetitive tasks in an environment where she is not expected to perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas." Tr. 28, 35.

Plaintiff takes issue with the ALJ's RFC as a whole, stating that it was not only "conclusory" but, without a proper narrative explanation, it is "unclear" how the ALJ's inclusion of "production rate[s]" and "hourly quotas" accommodates Plaintiff's CPP limitation. ECF 12, at 9-11. Plaintiff avers that because the ALJ "failed to provide any narrative explanation to bridge the gap between the evidence cited in his decision and his conclusion," his RFC determination is unsupported. ECF 12, at 11.

This argument is unavailing. The Court has previously recognized that similar production-rate RFC restrictions adequately account for a claimant's moderate CPP limitations. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address moderate CPP limitations); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S.*, 2022 WL 1721192, at *3 (holding that the ALJ accounts for Plaintiff's moderate CPP limitations when limiting Plaintiff to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]"). Moreover, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted,* slip op. (M.D.N.C. Sept. 21, 2016).

A careful review of the ALJ's decision reveals that the ALJ provided substantial evidence for the RFC provision that restricts Plaintiff from assembly-line work and hourly quotas. Specifically, the ALJ noted that Plaintiff endorsed concentration issues related to "her illnesses, injuries, or conditions," yet numerous medical encounters described Plaintiff's concentration as

"normal" or "intact". Tr. 26 (stating that Plaintiff "presented with normal attention and concentration" in multiple medical encounters, December 2021; March 2022; August 2022; January 2023); 32 (finding that in September 2021, Plaintiff's "mood was sad an anxious, and she endorsed hallucinations. However her behavior was pleasant, calm, and cooperative, she displayed normal concentration"); 35 (finding that Plaintiff "displayed normal concentration"). Additionally, the ALJ assigned persuasive value to Dr. Mary Menken and Dr. Shapiro, both of whom recognized Plaintiff's moderate CPP limitation. Tr. 33. Dr. Shapiro opined that Plaintiff's mood and PTSD symptoms fluctuate, thus "she may have occasional interruption to attention and task persistence as a result."[4] Tr. 86; s*ee Sizemore*, 878 F.3d at 80-81. Given this analysis, the ALJ's decision provides the requisite "logical bridge" connecting the evidence of Plaintiff's concentration issues to the RFC provision restricting Plaintiff from hourly quotas and assembly-line work. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Moreover, unlike in *Mascio*, the ALJ in this case accounted for Plaintiff's moderate CPP limitations. *See* Tr. 28, 35.

Plaintiff fails to identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. *See generally* ECF 12. Also, Plaintiff fails to explain how a more detailed explanation of the mental RFC might change the outcome of this case. Rather, Plaintiff argues, in essence, that the ALJ's lack of explanation precludes judicial review. ECF 12, at 12. But, as noted above, the ALJ adequately discussed Plaintiff's CPP limitations and provided substantial evidence to support the conclusions relevant to those limitations. Accordingly, remand is unwarranted because the Court's review is not "frustrate[d]" by "inadequacies in the ALJ's analysis[.]" *Mascio*, 780 F.3d at 636

## V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge

---

[4] The ALJ found Dr. Menken's and Dr. Shapiro's opinions "mostly persuasive." The ALJ determined that Plaintiff needed further limitations regarding "work that involves only occasional interaction with the general public." Tr. 33. The ALJ found the opinions as they relate to CPP persuasive. Tr. 33.